# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

**LA'RON READUS,**
    Plaintiff,

**v.**

**TRUEBLUE, INC., and**
**PEOPLEREADY, INC,**
    Defendants.

**CASE NO.:** 20-cv-11353

**PLAINTIFF DEMANDS A JURY**

---

Collin H. Nyeholt (P74132)
LAW OFFICES OF CASEY D. CONKLIN, PLC
Attorneys for the Plaintiff
4084 Okemos Road, Ste B
Okemos, MI  48864
(517) 522-2550
collin@caseydconklin.com

---

**COMPLAINT and JURY DEMAND**

---

1

## JURISDICTION AND VENUE

1. This is a claim for violation of the common law of the State of Michigan, as between diverse parties.

2. Plaintiff LA'RON READUS resides and, until the termination at issue in this Complaint, was employed in Livonia, Michigan. This claim stems from Plaintiff's position of employment with Defendant, the principal location of which was in Livonia and within the jurisdictional boundaries of this Honorable Court. He has no residence, significant property holdings, business interests, or other involvement with the State of Washington. He is therefore a Michigan domiciliary and, in any event, not a Washington domiciliary.

3. Defendant PEOPLEREADY, INC. is a corporation headquartered in, and organized under the law of, the State of Washington. This corporate entity is a wholly owned subsidiary, and business division, of TRUEBLUE, INC, a Washington business entity. Defendant PEOPLEREADY is, therefore, a domiciliary of the State of Washington.

4. Defendant TRUEBLUE, INC. is a corporation headquartered in, and organized under the law of, the State of Washington. This business entity is, therefore, a domiciliary of the State of Washington.

5. Plaintiff was, until the termination at issue in this Complaint, employed by the Defendants at a business location they operate in Livonia, Michigan. Plaintiff's business credentials, title, and W-2 identify him as an employee of Defendant PEOPLEREADY. Defendant TRUEBLUE exercised significant control and influence over policies, procedures, and decisions affecting PEOPLEREADY'S operations particularly with Plaintiff's employment. Employees and agents of Defendant TRUEBLUE, in fact, made or influenced the decision to terminate Plaintiff at issue in this complaint. Defendants PEOPLEREADY and TRUEBLUE, therefore, are jointly and

severally liable for Plaintiff's unlawful termination by reason of the joint employer doctrine and other applicable law.

6. This claim stems from Defendants' actions towards Plaintiff during the course of his employment with them that occurred in Livonia, MI which is within the jurisdictional bounds of the Eastern District of Michigan.

7. The Court may exercise *general in personem* jurisdiction over the Defendants by reason of their permanent business presence within the Eastern District. The Court may exercise *general in personem* jurisdiction over the individual Defendants by reason of their systematic and continuous exercise of business activities within same. In the alternative, the Court may exercise *specific jurisdiction* over this dispute because the transaction or occurrence giving rise thereto occurred within, or resulted from Defendants' business activities within and directed towards, the Eastern District of Michigan.

8. The Court may exercise subject matter jurisdiction over the claims stemming from state law exceeding $75,000 in value, as between two diverse parties, pursuant to 28 USC § 1332.

9. Venue is properly laid in this forum pursuant to 28 USC §§ 1391(b)(1) and (b)(2).

## ALLEGATIONS

10. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

11. Plaintiff was employed as a Staffing Specialist at the Livonia Branch of People Ready, which is a wholly owned subsidiary of True Blue, Inc. Plaintiff was a dedicated employee who performed his job duties to a high standard. His reviews were uniformly positive and he was never disciplined for any work-related misconduct.

12. On March 10, 2020 the State of Michigan DHHS identified the first two presumptive-positive cases of COVID-19 in the State. Governor Whitmer declared a State of Emergency pursuant to the Michigan Constitution and the State's Emergency Management Act.

13. The staff of the Livonia Branch responded to the mounting crisis by developing a COVID-19 contingency plan. Cynthia Porterfield, Livonia's Branch Manager, circulated an email on March 12th pertaining to the COVID-19 contingency plan. The plan detailed the closure of the Livonia Branch and the continuation of operations via remote means. Provisions were made to allow staff to continue to receive phone calls, process applications, and otherwise maintain the operations of the office remotely and without setting foot at the office.

14. District Head LuVonda Smith reviewed the proposed work-at-home plan, made a single alteration, and approved it.

15. On March 23, 2020 Michigan Governor Gretchen Whitmer signed Executive Order 2020-21. ("the Executive Order;" "the Order".) Governor Whitmer has enacted subsequent versions of this Order; however, this version is referred to throughout because it was the version that was in effect at the time of the events described herein.

16. The Order provided that for the period of March 24, 2020 to April 13, 2020 "all individuals currently living within the State of Michigan" must "stay at home or at their place of residence."[1] The Order further mandated that "[n]o person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence[.]"[2]

17. The Order provided a certain, *extremely limited*[3] exception that "[b]usinesses and operations that employ critical infrastructure workers may continue in-person operations[.]" Even so, the Order mandated specific conditions on "cricitcal infrastructure" businesses that remained in operation,[4] mandating that

---

[1] Order 2020-21 at ¶ 2.
[2] Order 2020-21 at ¶ 4.
[3] *See* Order 2020-21 at ¶ 1, providing that"[t]his order is to be construed broadly to prohibit in-person work that is not necessary to sustain or protect life."
[4] Order 2020-21 at ¶ 5.

4

"[b]usinesses and operations maintaining in-person activities must adopt social distancing practices and other mitigation measures to protect workers and patrons.[5]"

18. Defendants' management and legal department reviewed the Order in detail on March 23rd and determined itself to be within the "critical infrastructure" exception.

19. Even assuming that they were properly operating under the "critical infrastructure" exception, Defendants were nevertheless required by the Order to engage in certain protections for their employees and customers, including:

- **"Restricting the number of workers present on the premises to no more than is strictly necessary to perform the business's or operations critical infrastructure functions,"[6]**

- **"Increasing standards of facility cleaning and disinfection to limit worker and patron exposure to COVID-19"[7]**

- **"Adopting policies to prevent workers from entering the premises if they display respiratory symptoms or have had contact with a person who is known or suspected to have COVID-19,"[8] and, most importantly**

- **"Promoting remote work to the fullest extent possible."[9]**

20. A willful violation of this Order is a criminal misdemeanor.[10]

21. Given that there was already a viable, approved plan for Livonia Branch staff to work from home, it should have been very easy for Defendants to comply with their legal mandate to promote remote work.

22. But, that is not what happened.

23. Inexplicably, Defendants chose to leave the Livonia Branch open to the public.

---

[5] Order 2020-21 at ¶ 5(c).
[6] Order 2020-21 at ¶ 5(c)(1).
[7] Order 2020-21 at ¶ 5(c)(4).
[8] Order 2020-21 at ¶ 5(c)(5).
[9] Order 2020-21 at ¶ 5(c)(2).
[10] Order 2020-21 at ¶ 5(c)(2), *see also* MCL 10.33 and MCL 30.405(3).

24. At very least, they were required to take lawful steps to protect theirr employees while requiring them to report in person. But, they disregarded their lawful obligations in this respect as well. They did not, in any way shape or form, attempt to restrict the employees at the branch to those necessary to perform critical functions. They did not put any procedures or standards in place for facility cleaning. They did not institute any procedures to screen staff who were entering the facility for symptoms.

25. In light of the fact that you had in place a detailed, workable, approved plan for remote work, their manifold failures in this respect clearly evince a willful violation of their obligations under the law.

26. Plaintiff became concerned that his employer was requiring him to violate the law in order to continue with is employment. He was also concerned that, given Defendants' failure to lawfully adopt procedures to protect him, he was at undue risk to contract the Covid-19 infection.

27. He ended up using his personal leave days to avoid having to unlawfully break quarantine and expose himself to risk.

28. His paid leave expired on April 1, 2020.

29. On April 1, 2020 Plaintiff put his concerns in writing in an email he directed to his supervisor, Jennie Seibert. In this correspondence, he expressed concern that because he was required to "break quarantine" the continued in person operations were in violation of the Order, and that he would be subject to stop by the police when traveling to work. He also requested to know why the approved COVID-19 contingency plan for remote work had not been put in place.

30. At this point, Plaintiff had the option to report his employer's unlawful behavior to local law enforcement, or the Attorney General, to secure compliance with the Order. His intent to do so was apparent from the comments he made in his email.

31. On April 2 Seibert emailed him back and asked if she could call and speak to him. Fearing continued unlawful conduct, he asked if he could record the conversation. In response to that request Gregory Bell, one of True Blue's General Counsels, contacted him by email later that day and requested a phone call.

32. Plaintiff responded to Bell on Friday, April 3rd and again requested to either be permitted to record the conversation or, otherwise, communicate in email.

33. The fact that Plaintiff requested to record the conversation with counsel, or communicate in writing, informed the Defendants that Plaintiff was documenting their ongoing unlawful behavior, and implied that he intended to report same to law enforcement.

34. Plaintiff never received a response to this request to Mr. Bell. Instead, Defendants fired him from on April 6.

35. The stated reason was that he had been subject to a "massive layoff" and that his position would not be revived after the layoff period. Plaintiff is the only individual from the Livonia Branch who as affected by this supposed "massive layoff." And, this supposed "massive layoff" to which he was subjected was announced in the midst of his opposition to Defendants' ongoing illegal conduct.

36. It is herein alleged that the Defendants' stated reason for Plaintiff's termination was a pretext.

37. The *real* reasons for Plaintiff's termination were (1) that he had complained about Defendants' ongoing violations of Governor Whitmer's Executive Order, (2) that he objected to

being forced to violate the Order and commit a criminal misdemeanor as a condition of his employment, and (3) that he had taken steps necessary to document and report Defendants' ongoing unlawful conduct.

## COUNT 1 – WRONGFUL TERMINATION
*In Violation of the Public Policy of the State of Michigan*

38. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

39. Michigan is an at-will employment state. However, Michigan law recognizes an exception to the at-will employment doctrine: an employer in the State may not discharge, discipline, or otherwise discriminate against an employee because they have acted in accordance with a legal right or obligation.[11] An employee wins on such a claim when they can prove first, that they engaged in protected activity, second, that they were discharged, and third, that there was a causal connection between their protected activity and their discharge.[12] A public policy termination claim is evaluated independently from a claim under the Michigan Whistleblower's Protection Act and, therefore, defenses specific to the WPA are inapplicable.[13]

40. Plaintiff engaged in conduct protected by law by: (1) attempting to conform his conduct to the mandates of Executive Order 2020-21, and (2) requesting that his employer, the Defendants, likewise conduct their conduct to same.

41. Rather than lawfully acquiesce to Plaintiff's requests of them to comply with the law, and in the midst of his attempts to secure their lawful compliance, Defendants terminated his employment.

---

[11] *Suchodolski v Mich Con Gas Co*, 412 Mich 692, 694-95 (1982)
[12] *Giordano v. Williams Int'l Co.*, No. 342386, at *4-5 (Mich. Ct. App. Apr. 25, 2019) (*citing Clifford v Cactus Drilling Corp*, 419 Mich 356, 368 (1984)).
[13] *Watkins*, at *3-4 (Mich. Ct. App. Aug. 28, 2012) (finding Trial Court erred in evaluating public policy termination claim in light of WPA defenses).

42. The fact that Plaintiff was engaged in ongoing discussions with TrueBlue's general counsel regarding the noncompliance with the Order demonstrates that there was a causal connection between his termination and his protected conduct.

43. Defendants have compounded their error by stating a pretextual reason for Plaintiff's termination. This is evidence that they were conscious of their unlawful conduct, and that the decision was willful.

44. Plaintiff has suffered lost wages and benefits as a result of his wrongful termination.

45. He has incurred attorney's fees and court costs in opposing the violation.

46. And, he has suffered humiliation, outrage, and shock as a result of Defendants' knowing, intentional, and willful violation of the law.

## COUNT 2 –WRONGFUL TERMINATION
*In Violation of the Michigan Whistleblower Protection Act*
MCL § 15.361 *et seq*

47. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

48. Michigan's Whistleblower Protection Act provides that it is unlawful for an employer to "discharge, threaten, or otherwise discriminate" against an employee who "reports or is about to report" "a violation or suspected violation of a law or regulation or rule promulgated pursuant to the law of this state." MCL § 15.362.

49. Defendants are Plaintiff's "employers" as that term is contemplated by the Act.

50. Plaintiff is an "employee" of the Defendants as defined by the Act.

51. Executive Order 2020-21, and its progeny, are a law, regulation, or rule promulgated pursuant to the Emergency Management Act, a law of this State.

52. Plaintiff was about to report Defendants' violation of Executive Order 2020-21. He made this intent clear by complaining about Defendants' ongoing violations of same, and by requesting that correspondence about his complaint be recorded or conducted in writing.

53. Defendants, it is herein alleged, believed Plaintiff was about to report the violation by reason of his conduct in documenting his conversations about same.

54. Rather than lawfully respond to Plaintiff's requests to conform their conduct to the law, Defendants terminated Plaintiff's employment.

55. Plaintiff has suffered lost wages and benefits by reason of his termination.

56. He has incurred attorney's fees in opposing this violation of his rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1. ECONOMIC DAMAGES including, but not necessarily limited to, lost front and back pay and benefits from the paid position she was denied;

2. COMPENSATORY DAMAGES resulting from the emotional pain and distress she has suffered as a result of Defendants' unlawful conduct;

3. EXEMPLARY DAMAGES pursuant to Michigan Common Law;

4. Such other COMPENSATORY damages as may be appropriate to compensate Plaintiff for Defendant's unlawful conduct;

5. ATTORNEY'S FEES, in an amount determined reasonable by the Court, so wrongfully incurred in order to remedy the violation of her rights described herein, pursuant to the various statutes identified herein;

6. Pre and post judgment interest at the appropriate statutory rate, and

7. Such other relief as this Court may deem just and appropriate in law or in equity.

## PLAINTIFF DEMANDS A JURY

Respectfully Submitted,

Dated: 5/ 28 / 2020    \_\_/s/ Collin H. Nyeholt\_\_\_\_\_
Collin H. Nyeholt,
Attorney for the Plaintiff